# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
In Re LUZ WALKER           )
SUBPOENA                   )
                           )
                           )          1:23MC9
                           )
                           )
                           )
```

## MEMORANDUM OPINION AND ORDER

This case comes before the Court on non-party petitioner Luz Walker's ("Walker") Motion to Stay and to Quash Deposition Subpoena (Docket Entry 1 (the "Motion to Quash"); see also Docket Entry 2 ("Supporting Memorandum")). Parties to the underlying action, Dr. Mahendra Amin ("Amin") and NBCUniversal Media, LLC ("NBCU"), filed responses to the Motion to Quash (see Docket Entry 11 ("NBCU Response"); Docket Entry 12 ("Amin Response")), to which Walker replied (Docket Entry 13). Walker thereafter filed a Supplemental Amended Motion for Relief in the Alternative (Docket Entry 16 (the "Alternative Relief Motion")), to which Amin responded (Docket Entry 18) and Walker replied (Docket Entry 19). For the reasons that follow, the Court denies the Motion to Quash and grants in part and denies in part the Alternative Relief Motion.

## I. BACKGROUND

Amin brought a defamation suit against NBCU in the United States District Court for the Southern District of Georgia after several of NBCU's news broadcasts in September 2020 reported on gynecological medical services Amin provided to certain patients,

during their time in the custody of United States Immigration and Customs Enforcement ("ICE").  See Amin v. NBCUniversal Media, LLC, No. 5:21-CV-56 (S.D. Ga. 2021).  Separately, but relatedly, Walker and several other plaintiffs sued Amin (and others) in the Middle District of Georgia, raising a variety of federal and state torts. See Oldaker v. Giles, No. 7:20-CV-224 (M.D. Ga. 2020) (hereinafter, "Oldaker").  That suit, too, addressed (in part) Amin's allegedly improper medical care of women in ICE custody.  See Oldaker v. Johnson, No. 7:20-CV-00224, 2021 WL 4254864, at *1 (M.D. Ga. Sept. 17, 2021) (noting claim that patients "were subjected to medical and other abuse—most notably, unnecessary and nonconsensual gynecological procedures by [] Amin that left some [patients] unable to have a child").

The court in Oldaker stayed discovery due to ongoing government investigations of Amin's conduct (see Docket Entry 2-6 at 3-4), but discovery in Amin's defamation suit proceeded (after resolution of a dispositive motion brought by NBCU), see Amin v. NBCUniversal Media, LLC, No. 5:21-CV-56, 2022 WL 18717413, at *3 (S.D. Ga. Apr. 19, 2022).  At the outset of discovery in Amin's defamation suit, NBCU identified Walker as an individual "reasonably likely to have discoverable information."  (Docket Entry 12-2 at 3-4.)  Amin thereafter sought to obtain discovery from Walker, the means and manner of which counsel for Amin, NBCU, and Walker negotiated for the better part of a year.  (See

2

generally Docket Entry 2-2; Docket Entry 12-4; Docket Entry 12-5; Docket Entry 12-6.)

Those negotiations eventually broke down, and Amin served Walker with a deposition subpoena requiring her testimony in this District. (Docket Entry 2-1.) Additional post-service negotiations yielded no compromise. (See Docket Entry 7-1 at 32-36; see also id. at 47-48.) Accordingly, Walker timely moved to quash the subpoena in this Court. See Fed. R. Civ. P. 45(c)(1)(A) and (d)(3)(A).

## II. DISCUSSION

"All civil discovery, whether sought from parties or nonparties, is limited in scope by [Federal] Rule [of Civil Procedure] 26(b)(1)," Virginia Dep't of Corr. v. Jordan, 921 F.3d 180, 188 (4th Cir. 2019), in that the information sought must "[be (1)] relevant to a[] party's claim or defense and [(2)] proportional to the needs of the case," Fed. R. Civ. P. 26(b)(1). "Discovery rules are to be accorded broad and liberal construction," Boshea v. Compass Mktg., Inc., No. 21-CV-309, 2021 WL 4425765, at *2 (D. Md. Sept. 27, 2021), and "[r]elevance is not, on its own, a high bar," Jordan, 921 F.3d at 188. That said, Federal Rule of Civil Procedure 45 imposes "[a] more demanding variant of [Federal Rule of Civil Procedure 26's] proportionality analysis," id. at 189, in order to ensure that parties do not draw nonparties "into the[ir ] dispute without some good reason," id.

3

Notwithstanding the greater scrutiny of discovery requests to nonparties, "the ultimate question [under either Federal Rules of Civil Procedure 26 or 45] is whether the benefits of discovery to the requesting party outweigh the burdens on the recipient." Id.

Additionally, "[a] party or any person from whom discovery is sought may move for a protective order . . . in the court for the district where the deposition will be taken." Fed. R. Civ. P. 26(c)(1). "In order to obtain a protective order, the [movant] must demonstrate good cause." Brittain v. Stroh Brewery Co., 136 F.R.D. 408, 412 (M.D.N.C. 1991). Good cause includes "protect[ing] a [] person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). In seeking a protective order, "[t]he burden is on the party resisting discovery to explain specifically why its objections, including those based on irrelevance, are proper given the broad and liberal construction of federal discovery rules." Desrosiers v. MAG Indus. Automation Sys., LLC, 675 F. Supp. 2d 598, 601 (D. Md. 2009).

Walker moved to quash the subpoena on three grounds: relevance, burden, and violation of the discovery stay in Oldaker. (See Docket Entry 2 at 2-4.) None of those three bases merit the relief Walker seeks.

*The Discovery Stay*

The Court can most quickly address Walker's argument that allowing her deposition to proceed would permit Amin to

4

"effectively [] obtain[] party discovery in the Oldaker case, in violation of the Oldaker discovery stay." (Id. at 14.) On the same day Walker filed the Motion to Quash, she separately filed a motion to show cause in Oldaker, in which she requested that the court in that case order "Amin to show cause why he should not be held in contempt for his failure to comply with th[at c]ourt's discovery stay." (Docket Entry 7-1 at 3.) The Oldaker Court held a hearing on that motion, and concluded that Amin did not violate the discovery stay by issuing subpoenas in his defamation suit, largely because the court in Oldaker "did not intend for its [s]tay [o]rder to interfere with or affect the discovery process of litigation in other courts." (Docket Entry 15-1 at 4.) This Court would not conclude otherwise. Accordingly, because the deposition subpoena does not violate the discovery stay in Oldaker, that stay does not serve as grounds to quash the subpoena to Walker.

*Relevance*

Walker also argues that the Court should quash the deposition subpoena because her testimony "would be irrelevant" to the challenged statements at issue in Amin's defamation suit. (See Docket Entry 2 at 10.) In that regard, the Supporting Memorandum notes that, "[t]he only [c]hallenged [s]tatements remaining at issue in Amin's defamation action concern allegations in [a] whistleblower complaint, statements made by [the whistleblower] during her interview with MSNBC, and certain statements made to

5

reporters by lawyers who represented detained women . . . ." (Id.) Further, the Supporting Memorandum asserts that, "[o]f the 27 [s]tatements still at issue, 23 relate to alleged hysterectomies or removal of other reproductive organs and 4 concern unspecified non-consensual procedures or physical roughness by Amin." (Id. at 10-11.) Because, according to Walker, she "had no hysterectomy or other surgery by Amin" (id. at 11), and never "communicated with NBCU" (id.), her "testimony is therefore irrelevant to Amin's defamation claims with respect to either falsity or actual malice" (id.).

The Court disagrees with that position for several reasons. First, as another court indicated (when considering a separate motion to quash brought by another Oldaker plaintiff), NBCU's listing of Walker "as a witness[] with relevant information in the case . . . entitle[s] Amin to take her deposition." (Docket Entry 7-3 at 9.) Although that court ultimately issued a stay of the deposition (prior to the Oldaker Court's ruling that the deposition subpoenas did not violate the discovery stay), it did so with the statement that the court "d[id] think [] Amin is entitled to take the deposition if by virtue of nothing else [than the fact that] NBC[U] has identified [the Oldaker co-plaintiff] as a witness they intend to rely on with knowledge of the case." (Id. at 43-44.) This Court agrees with that logic. NBCU identified Walker as an individual "reasonably likely to have discoverable information."

6

(Docket Entry 12-2 at 3-4.)  Walker's argument to the contrary does not suffice to rebut her identification as a witness by NBCU or to establish the irrelevance of her potential testimony.

Second, given Walker's concession that at least some of the remaining challenged statements in the defamation suit relate to issues other than hysterectomies (see Docket Entry 2 at 11), Walker's own allegations in Oldaker undermine her assertion here that her testimony "would be irrelevant" to the challenged statements at issue (see id. at 10).  As NBCU points out in its Response, two of the challenged statements assert that Amin's contact with patients "was overly harsh" (Docket Entry 11 at 3), and that Amin performed "very unnecessary procedures and not what you would need in a short-term detention situation" (id.).  In Oldaker, Walker's allegations include that Amin "subjected [her] to non-consensual and medically unindicated invasive gynecological procedures" (Docket Entry 2-5 at 27), and that Amin "was rough" and "did not use lubrication" (id. at 28) when inserting an ultrasound wand during a transvaginal ultrasound he administered to Walker (see id.).  Walker's allegations in Oldaker thus plainly bear on the truth or falsity of at least two challenged statements in Amin's defamation action.  Even if Walker did not act as a source to NBCU for its reports, Amin must prove the falsity of the challenged statements, see RCO Legal, P.S., Inc. v. Johnson, 347 Ga. App. 661, 668 (2018), and "truth is an absolute defense in a

7

defamation action," Watkins v. Laser/Print-Atlanta, Inc., 183 Ga. App. 172, 173 (1987). Accordingly, Walker's assertion that her testimony "would be irrelevant" (Docket Entry 2 at 10) lacks merit.

Third, and relatedly, Walker's arguments as to burden in the Supporting Memorandum further undermine her contention that her potential testimony would lack relevance, at least as to the challenged statement that Amin "was overly harsh" (Docket Entry 11 at 3). The Supporting Memorandum states that the deposition would impose a significant burden on Walker because it "would require her to recount traumatic events that happened in the context of receiving medical treatment" (Docket Entry 2 at 13), "in response to questioning from Amin, the very person who caused her trauma" (id.). Elsewhere, Walker refers to Amin's "traumatizing medical care" (Docket Entry 13 at 2), as well as the prospect that the deposition would address "sensitive medical abuse issues" (id. at 9). To the extent Walker alleges Amin abused and inflicted trauma upon her, she would possess relevant testimony as to the challenged statement that Amin's contact with patients "was overly harsh" (Docket Entry 11 at 3).

Finally, Walker's potential testimony involves more than just her own experience with Amin. Her allegations in Oldaker include that she "knew at least ten women who underwent gynecological surgery or other procedures by Dr. Amin, in some cases without consent to, or understanding of, the procedures performed."

8

(Docket Entry 2-5 at 28.)  She also has alleged that she "cared for many of the women operated on by [] Amin" (id.) and her attorneys argued to government investigators that Walker "warranted protection from deportation because she possesse[d] information relevant to ongoing federal investigations" (id. at 29), specifically "concerning [] Amin's mistreatment of women" (id. at 28).  According to her own allegations, then, Walker possesses information relevant to additional challenged statements in Amin's defamation suit, by virtue of the fact that she knows of (and cared for) multiple "women who underwent gynecological surgery or other procedures by Dr. Amin."  (Id.)

Taken together, Walker's potential testimony would relate to several of the challenged statements, and the Court will not quash the deposition subpoena based on Walker's arguments of irrelevance.

*Burden*

Lastly, Walker argues that "the burden of compelling her to attend a deposition to discuss personal medical information in a case to which she is not a party vastly outweighs any purported [evidentiary] benefit." (Docket Entry 2 at 12-13.)  The Supporting Memorandum seeks to buttress that argument with several points.  First, Walker contends that the irrelevance of her testimony would render any deposition unduly burdensome.  (Id. at 13.)  Next, she asserts that, because Amin "possesses his first-hand knowledge and records of the single exam he performed on Walker" (id.), her

9

testimony would not offer any value above what Amin already knows (see id.). Walker also argues that Amin's need for her testimony carries less weight than her "privacy interest in not being forced to testify about sensitive, upsetting events" (id.). (See id.) Finally, Walker suggests that, because Amin may seek to depose her a second time in Oldaker, allowing this deposition to proceed "would create an unacceptable likelihood that she would be subject to not one, but *two*, depositions by Amin concerning the same traumatic events." (Id. at 15 (emphasis in original).)

None of these arguments warrant quashing or modifying the subpoena. First, having already concluded that Walker possesses information relevant to Amin's defamation suit, the Court would not conclude that requiring her to testify as to that relevant information would impose a burden on her, and certainly not an undue one, see Fed. R. Civ. P 45(d)(3)(A)(iv).

Second, Walker's testimony **would** offer evidentiary value over and above Amin's personal knowledge and records, if for no other reason than that Walker's testimony would likely differ drastically from Amin's perspective on the medical examination at issue. But additionally, as explained above, Walker has also indicated that she possesses knowledge of the treatment of other women who allegedly suffered medical abuse from Amin (see Docket Entry 2-5 at 28); such testimony goes beyond the scope of Amin's "first-hand

knowledge and records of the single exam he performed on Walker" (Docket Entry 2 at 13).

Third, although the Court recognizes Walker's legitimate interest in not reliving events she regards as traumatic, that interest carries less persuasive force where, as here, Walker has separately initiated litigation related to those same events. See Oldaker v. Giles, No. 7:20-CV-224 (M.D. Ga. 2020). And, to the extent Walker has expressed concern about disclosing personal medical information, the court in the underlying case has adopted a protective order, pursuant to which Walker's counsel may designate certain testimony as confidential. (See Docket Entry 12-7.)

That analysis leaves Walker's argument that she should not have to sit for two depositions. At present, Amin has only sought to depose Walker in his defamation suit. Should Amin elect to seek a second deposition in Oldaker, Walker may more persuasively raise that argument in the relevant court. The hypothetical risk of a subsequent deposition in separate litigation does not justify quashing a live deposition subpoena here in connection with Amin's defamation suit. To that point, and as reflected during the hearing in Oldaker on Walker's motion to show cause, the Oldaker court has not yet resolved dispositive motions, which may eliminate the need for certain discovery, including a deposition of Walker. (See generally Docket Entry 15-2 at 21-23, 51-54). Further, all

11

discovery in that case remains stayed, pending the ongoing government investigations. (See id.) As a result, Walker's speculative assertion that "Amin is certain to seek to depose Walker a second time" (Docket Entry 2 at 15) does not establish an existing undue burden on Walker, in light of Oldaker's procedural posture. If Amin notices another deposition of Walker sometime in the future, Walker may litigate this argument of burden at that time.

In sum, the three grounds Walker raised in her Motion to Quash and Supporting Memorandum do not merit quashing or modifying the deposition subpoena, under either Federal Rules of Civil Procedure 26 or 45. Accordingly, the Court will deny the Motion to Quash.

*Alternative Relief Motion*

After Walker, Amin, and NBCU fully briefed the Motion to Quash, Walker filed the Alternative Relief Motion, wherein she "request[ed, in the alternative,] that . . . the subpoena . . . be modified to require [certain] guardrails." (Docket Entry 16 at 1.) Those guardrails include that (1) Amin and NBCU provide Walker with intended question topics one week prior to the deposition, (2) Amin and NBCU provide Walker with intended exhibits one week prior to the deposition, (3) the deposition last no longer than 4 hours, and (4) no person make use of the deposition outside of Amin's deposition suit. (See id. at 1-2.) The Court will grant the Alternative Relief Motion only as to the first "guardrail."

12

Given Walker's status as a nonparty to Amin's defamation suit, requiring Amin and NBCU to provide Walker with intended topics of questioning prior to the deposition will sufficiently address the risk of Walker "be[ing] drawn into the parties' dispute," Jordan, 921 F.3d at 189, to an extent greater than necessary, and will help ensure that the "benefits of discovery to [Amin and NBCU] outweigh the burdens on [Walker]," id. As for the second proposed guardrail, the Alternative Relief Motion notes only that "Amin and NBCU do not object to [it]." (Docket Entry 16 at 7.) However, a contemporaneous email from Amin's counsel to Walker's counsel expressly states that "there is no deal on the table with regard to [] Walker." (Docket Entry 19-3 at 2.) And, in any event, a lack of objection from the non-moving party in the context of negotiations preceding subpoena-related litigation does not alone satisfy the standard for modifying a subpoena under either Federal Rules of Civil Procedure 26 or 45. Here, the Court finds good cause neither to require Amin and NBCU to disclose to Walker the documents about which they intend to question Walker, nor to conclude that providing those documents in advance would alleviate any undue burden on Walker.

The Alternative Relief Motion further contends that the third guardrail, "limiting any live deposition to half a day" (Docket Entry 16 at 7), properly reflects "Walker's status as a non-party" (id.), "is twice as long as the 2 hours . . . that Walker

13

originally proposed" (id. at 8), and "will facilitate efficiency" (id.). The Court does not find any of these arguments compelling, given that the Federal Rules of Civil Procedure do not make exception for nonparty depositions, see Fed. R. Civ. P. 30(d)(1), a person's opening offer with regard to deposition length bears no reliable relationship to the amount of time actually required to adequately depose that person, and Amin and NBCU already bear an obligation to conduct Walker's deposition efficiently, see Fed. R. Civ. P. 1. Furthermore, given that two parties, rather than just one, will depose Walker, and that Walker may require the services on an interpreter, the Court sees no reason to deviate from the seven hour limit provided by Federal Rule of Civil Procedure 30.

Walker's final proposed guardrail would "cabin[] use of Walker's non-party testimony to only the defamation case." (Docket Entry 16 at 9.) In support, the Alternative Relief Motion argues that Walker should not have to sit for "a 'blind' deposition . . . before [she] ha[s] had written discovery [in Oldaker]" (id. at 9-10), in which case she would potentially "be subject to impeachment in proceedings outside the defamation case if [her] recollection is later refreshed or [her] knowledge informed by production of written discovery in Oldaker" (id. at 10). This argument appears premature, given the pending dispositive motions and discovery stay in Oldaker. Walker also fails to identify with any specificity what written discovery she would receive in Oldaker that would

14

refresh her current recollection of events. Her hypothetical argument, built on several layers of speculation, does not establish good cause.

Further, as noted previously, a protective order already exists in Amin's defamation suit, pursuant to which Walker's counsel may designate certain testimony as confidential (see Docket Entry 12-7), which apparently would limit use of that testimony to the defamation suit (see id. at 4). This Court declines to issue an order that may deviate from or constructively amend the existing protective order. Moreover, the Court would not seek to dictate the admissibility or use of certain evidence in Oldaker; Walker should raise that issue in the appropriate court.

In sum, circumstances warrant requiring Amin and NBCU to disclose intended deposition topics to Walker one week in advance of the deposition, but the other proposed guardrails fail for want of good cause.

### III. Conclusion

The record indicates Walker possesses information relevant to Amin's defamation suit, and a deposition would not impose a disproportionate or undue burden on her (subject to the modification that Amin and NBCU provide examination topics one week in advance of the deposition).

**IT IS THEREFORE ORDERED** that the Motion to Quash (Docket Entry 1) is **DENIED,** and that the Alternative Relief Motion (Docket Entry 16) is **GRANTED IN PART AND DENIED IN PART,** in that Amin and NBCU shall provide intended deposition topics to Walker one week prior to her scheduled deposition date.

This 28th day of June, 2023.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**